# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ST. COLETTA'S OF ILLINOIS, INC., an Illinois not-for-profit corporation, and JESSE McMORRIS, an individual, </br></br>Plaintiffs,</br></br>v.</br></br>CITY OF MARKHAM, an Illinois municipal corporation, DAVID WEBB, JR., J.V. COOK, SR., THADDEUS GOODLOW and ROGER AGPAWA, individuals,</br></br>Defendants. | ) ) ) ) ) ) ) ) No. 08 CV 409 ) ) ) ) ) ) ) ) ) |

## AFFIDAVIT OF RAY BRYAN

I, Ray Bryan, being over the age of 18, and first duly sworn, do state upon oath as follows:

1. I have personal knowledge of the facts contained herein and if called to testify would testify to the same.

2. St. Coletta's is an Illinois not-for-profit corporation founded by the Sisters of St. Francis of Assisi and provides a variety of services to developmentally disabled adults and children, including the operation of assisted-living residential group homes.

3. I am the Director of Residential Services at St. Coletta's and have been involved with getting permits from the City for the installation of a sprinkler system and fire alarm system.

4. On January 22, 2008, at approximately 1:15 p.m., Jerry Golk and I went to Markham Village Hall with the Order of Mandamus issued that morning for the purpose of getting the fire and sprinkler permits.

5. Thaddeus Goodlow, the Residential Building Inspector, happened to be in the office. The clerk on duty pointed us out to him, and he immediately said, "I don't issue permits. I am not the one. Agpawa issues permits."

6. We tried to have them locate Deputy Fire Chief Mr. Agpawa, but they said he was out to lunch until 2:00. We said we would wait, and in the meantime, went outside to see if he might be at the firehouse. Since there was no answer, we decided to go back to the van. As we were talking outside the van, Mr. Goodlow motioned with his hand for us to come back inside. When we were upstairs, Mr. Goodlow said, "I don't have any paperwork. Who's doing the work for you guys for the sprinkler? I don't have anything."

7. Jerry explained to Mr. Goodlow that the sprinkler application was sent in by Central State, our contractor. Mr. Goodlow claimed that he did not have either the sprinkler application or fire alarm application and asked for a copy of the contracts that we were signed with the companies that are doing the work. Mr. Goodlow then went into the Mayor's office.

8. The Mayor summoned two other people into his office. They were in the Mayor's office for quite a while. Mr. Goodlow finally came out and said, "we are going to issue you permits today as long as the contractors are licensed and bonded through Markham because I don't need to go through this any more."

9. We proceeded to the clerk to get the sprinkler permit first. Central State is licensed and bonded, and the clerk issued us a permit. She wanted a copy of the contract to get the cost because the cost of the permit is based on the contract. The contract by Rich Wagner's construction company and Central States quoted $13,000. We obtained the permit for the sprinkler system for a fee of $151.

10. Regarding the alarm system, DMC is not on their list as being licensed and bonded in Markham. The clerk asked whether we wanted to pay for both permits together to which I replied no.

11. After Jerry paid for the sprinkler permit, Mr. Agpawa returned from lunch and said he wanted to talk about permits. We said that we already have the sprinkler permit. He wanted to know who signed off. We said that Mr. Goodlow did. He immediately replied, "Goodlow is not authorized to sign any permits. I am the only one who can sign permits." Mr. Goodlow and Mr. Agpawa were going back and forth with each other with comments like, "you are signing a permit, and you don't have the permit application?"

12. Mr. Goodlow left, and Mr. Apgawa then talked to both of us. He said, "I have got to dot all my i's and everything must check out." He also said, "I understand that you guys have a court order." We provided Mr. Agpawa our copy of the Order.

13. Mr. Agpawa then stated that he needed to go through the paperwork he has concerning the sprinkler system. (He acknowledged that he has the paperwork.). He claimed that it would minimally take one or two days for him to go through the plans. If everything is in order, Mr. Agpawa stated he would sign off next to Goodlow.

14. Because the permit given to Jerry and I only had Mr. Goodlow's signature and not Mr. Agpawa's signature, Mr. Agpawa stated that the sprinkler permit is not valid.

15. Mr. Agpawa also told Jerry, that he would need to talk to somebody from Central States, our contractor for the installation of the sprinkler system and that he may need to go into that house to make sure the plans are compatible with the house.

16. When I questioned the City about their desire to enter the house, they kept referring to this as a "special use situation", which, according to them is a "different" situation.

17. Mr. Agpawa refused to issue us the permit for the installation of the fire alarm system because the City claims that our contractor for the project, DMC Security Services, Inc. ("DMC") is not licensed or bonded with Markham.

18. Mr. Apgawa knows Chester, the owner of DMC, so he believed that could be worked out with no problem. DMC has a state permit that supersedes the local authority, and they carry a $2 million insurance policy as opposed to a $10,000 bond.

19. Although Mr. Apgawa stated that he would work out this issue, we were not issued the permits.

FURTHER AFFIANT SAYETH NOT

_____
Ray Bryan

Subscribed and Sworn to
before me this 23rd day of January, 2008

_____
Notary Public

OFFICIAL SEAL
GEORGENE A. NASH
Notary Public - State of Illinois
My Commission Expires Dec 04, 2010