# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ST. COLETTA'S OF ILLINOIS, INC., an Illinois not-for-profit corporation, and JESSE McMORRIS, an individual,<br><br>      Plaintiffs,<br>v.<br><br>CITY OF MARKHAM, an Illinois municipal corporation, DAVID WEBB, JR., J.V. COOK, SR., THADDEUS GOODLOW and ROGER AGPAWA, individuals,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SUPPLEMENTAL AFFIDAVIT OF RAY BRYAN

I, Ray Bryan, being over the age of 18, and first duly sworn, do state upon oath as follows:

1.    I have personal knowledge of the facts contained herein and if called to testify would testify to the same.

2.    St. Coletta's of Illinois, Inc. ("St. Coletta's") is a not-for-profit organization, organized under the laws of Illinois.

3.    I am the Director of Residential Services at St. Coletta's.

4.    St. Coletta's owns and since 1994 has operated a residential group home located at 3829 West 154th Place in Markham, Illinois (the "Zolecki Home"). The Zolecki Home was not required to obtain a business license prior to its opening or at any time during its operation from 1994 to the present.

1080695

5. On or about November 3, 2007, St. Coletta's purchased the Home, formerly a single family residence, for the purpose of opening a group home for six (6) developmentally disabled persons.

6. The Home is intended for 6 adult males who are developmentally, and in one case physically, disabled, which disabilities substantially impair one or more of their major life activities.

7. None of St. Coletta's residents have criminal backgrounds.

8. St. Coletta's will provide 24-hour supervision for the residents, in three 8 hour shifts by employees of St. Coletta's who do not reside or sleep at the Home. The employees also provide transportation services and assistance with activities of daily living, such as cooking and cleaning, paying bills and facilitating social interaction.

9. St. Coletta's also provides some prospective residents with job training, though some may never be able to work in the community at large due to their disabilities.

10. St. Coletta's has entered into contracts with six individuals for rooms at the Home, including Jesse.

11. Jesse currently lives with 3 other developmentally disabled persons at an apartment located at 18131 South 66th Court in Tinley Park, Illinois. Three of those individuals have been with St. Coletta's and at that apartment for over 10 years.

12. St. Coletta's rents this apartment for its clients, including Jesse, and the lease expires at the end of January 2008.

13. These residents are scheduled to move into the Home at the beginning of February.

14. St. Coletta's does not have a suitable housing alternative to the Home for Jesse or the other prospective disabled residents scheduled to move into the Home.

15. On or about November 21, 2007, St. Coletta's through its agents and/or contractors applied to the City for permits for the installation of a fire alarm system and sprinkler system, which work must be done in accordance with Illinois law.

16. Mr. Goodlow informed myself and Jerry Golk ("Jerry") that before the City could receive a building permit, St. Coletta's would have to apply for a business license and also petition the City for approval of the Home's use.

17. When we approached the City for the requisite paperwork to obtain a license, we informed the City Clerk that we needed an expedited hearing on the petition and application because the Home needed to be fully operational by the end of January 2008.

18. The City Clerk informed us that the City would expedite a special meeting before the Planning Commission if St. Coletta's paid $500 with its petition.

19. Relying on the advice and direction of both Mr. Goodlow and the City Clerk, on or about November 30, 2007 St. Coletta's filed its petition for approval, its application for a business license and tendered a $500 filing fee.

20. The City made no response to St. Coletta's after St. Coletta's filed it petition and application for a business license and tendered the $500 filing fee. So on or about December 11, 2007, I, along with counsel, inquired with the City about the status of St. Coletta's petition, application and expedited meeting.

21. City staff told us that we would have to speak to the City Clerk, who then informed us that she had no authority to schedule a Planning Commission meeting and that we would have to meet with Mr. Goodlow about the issue.

1080695

22.  When we met with Mr. Goodlow, he admitted that St. Coletta's request for expedited review of its petition before the Planning Commission had not been processed, claimed that it had been misplaced, stated that he would try to get the petition expedited and that at least St. Coletta's would be on the next regular meeting agenda scheduled for January 9, 2008.

23.  Mr. Goodlow also advised us that the City was having "trouble" with some other existing group homes in the City because they "allowed rapists and criminals" into the City.

24.  At that time, we expressed to Mr. Goodlow that we believed that neither a license nor a petition were necessary under the Code. Mr. Goodlow reviewed the Code, but then claimed he would need to speak to an unnamed alderperson.

25.  Mr. Goodlow then purported to make a call to the alderperson, and after the call, he advised us that we needed to have a hearing before the Planning Commission.

26.  Mr. Agpawa joined the meeting and stated that he had no problems or issues with the Zolecki Home, but advised us that he could not issue the permits without the necessary license and approvals.

27.  We expressed concern about the delay in the proceedings due to the fact that the Home was scheduled to open at the end of January 2008 and that if it did not open, its prospective residents would be without suitable lodging because their lease expired at the end of January 2008.

28.  Mr. Goodlow then advised us to meet with the Mayor for better directions.

29.  When we approached the Mayor's office for further direction, the Mayor's secretary refused to let us see the Mayor, referring us instead back to Mr. Goodlow.

30.  We requested that the building permits be issued while St. Coletta's other requests were pending. St. Coletta's request was denied.

1080695

31. Although St. Coletta's paid $500 to "expedite" the Planning Commission's hearing on St. Coletta's request, no expedited hearing before the Commission was scheduled prior to the January 9, 2008 regular meeting.

32. I, along with Wayne Kottmeyer and counsel, appeared before the City's Planning Commission on January 9, 2008, only to learn that prior to the meeting, the Planning Commission received a report by a consultant hired by the City, in which the consultant recommended that the Planning Commission reject St. Coletta's petition for approval on the supposed basis that a residential group home would be a non-conforming use for which zoning approval was required.

33. The City did not provide St. Coletta's with a copy of the consultant's report before or at the January 9, 2008 Planning Commission hearing.

34. At the hearing, we expressed to the Planning Commission that St. Coletta's believed its proposed use was permitted by existing zoning and that no business license was even necessary under the Code. Despite our position, in an effort to facilitate timely opening of the Home and prevent displacement of the prospective residents, we requested that the Planning Commission: 1) approve the use; 2) approve the business license and record it to the City so St. Coletta's could be placed on the January 16 City Council meeting agenda for approval of the business license; and 3) instruct the City staff to issue the building permits for the sprinkler and fire alarm system.

35. On the public record, Mr. Goodlow advised the Planning Commission that St. Coletta's and the seller of the Property provided fraudulent and misleading information to the City in order to obtain an occupancy permit for the Property and that he would never have issued the certificate of occupancy if he had known that it was going to be used as a group home.

36. The Planning Commission also acknowledged that St. Coletta's petition and application has been misplaced, yet it refused to expedite any further necessary proceedings.

37. When the Planning Commission opened the floor for general discussion, several Markham residents spoke out against St. Coletta's opening of the Home expressing concern about St. Coletta's residents being criminals and sexual predators.

38. We confirmed that none of its residents have criminal backgrounds.

39. After the open session, the Planning Commission's other and newly appointed attorney (*not* Mr. Miller, whose zoning opinion had supported St. Coletta's planned use of the Home) suggested that the Planning Commission needed additional time to consider the conclusions of its consultant and her own legal opinion to the Planning Commission.

40. As a result, the Planning Commission refused to address our requests, failed to make any recommendation to the City Council and refused to authorize the addition of St. Coletta's to the City Council's meeting agenda for January 16, 2008.

41. St. Coletta's petition was tabled until the next regularly scheduled planning commission meeting, which the City knew would be too late to facilitate the January 30, 2008 deadline.

42. At the meeting, the Planning Commission also informed us that St. Coletta's needed to pay an additional $250.00 for a special Planning Commission meeting, even though St. Coletta's had been told that it would only cost $500.00 for an expedited hearing.

43. On January 10, 2008, I went to the City Hall and paid the additional $250.00 for an expedited hearing.

44. St. Coletta's still has not been scheduled for a special Planning Commission meeting.

1080695

45. On or about January 9, 2007, I was informed that the Mayor instructed that the water to the Property be turned off without notice, even though there was no delinquency in the water bill payments for the Property.

FURTHER AFFIANT SAYETH NOT

*Ray Bryan*

Subscribed and Sworn to
before me this /8th day of January, 2008

*Georgene A. Nash*
Notary Public

```
OFFICIAL SEAL
GEORGENE A. NASH
Notary Public - State of Illinois
My Commission Expires Dec 04, 2010
```

1080695