# EXHIBIT C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ST. COLETTA'S OF ILLINOIS, INC., )
an Illinois not-for-profit corporation, )
and JESSE McMORRIS, an individual, )
)
      Plaintiffs, )
v. )
) No. 08 CV 409
)
CITY OF MARKHAM, an Illinois )
municipal corporation, DAVID WEBB, JR., )
J.V. COOK, SR., )
THADDEUS GOODLOW and )
ROGER AGPAWA, )
individuals, )
)
      Defendants. )

## AFFIDAVIT OF WAYNE KOTTMEYER

I, Wayne Kottmeyer, being over the age of 18, and first duly sworn, do state upon oath as follows:

1. I have personal knowledge of the facts contained herein and if called to testify would testify to the same.

2. St. Coletta's is a not-for-profit organization organized under the laws of the State of Illinois and it is a 501(c)(3) tax exempt entity which has no owners, shareholders, or any other individuals who receive private benefit. St. Coletta's owns and operates approximately 30 not-for-profit residential group homes for physically, mentally and developmentally disabled persons in the southwest suburbs of Chicago.

3. St. Coletta's owns and since 1994 has operated a residential group home located at 3829 West 154th Place in Markham, Illinois (the "Zolecki Home"). The Zolecki Home was

1072808

not required to obtain a business license prior to its opening or at any time during its operation from 1994 to the present.

4. On or about November 3, 2007, St. Coletta's purchased a home that is a single family residence, for the purpose of opening a group home for six (6) developmentally disabled persons.

5. The Home is intended for 6 adult males who are developmentally disabled, and in one case physically disabled, which disabilities substantially impair one or more of their major life activities. None of St. Coletta's residents have criminal backgrounds.

6. St. Coletta's will provide 24-hour supervision for the residents, in three 8-hour shifts by employees of St. Coletta's who do not reside or sleep at the Home. The employees also provide transportation services and assistance with activities of daily living, such as cooking and cleaning, paying bills and facilitating social interaction.

7. St. Coletta's also provides some prospective residents with job training, though some may never be able to work in the community at large due to their disabilities.

8. The Home is located on property that is zoned for single-family residential use.

9. Around the time St. Coletta's purchased the property, the builder obtained an occupancy permit for the property.

10. St. Coletta's has entered into contracts with six individuals for rooms at the Home, including Jesse

11. These residents are scheduled to move into the Home at the beginning of February, due to the expiration of their leases.

12. St. Coletta's does not have a suitable housing alternative to the Home for Jesse or the other prospective disabled residents scheduled to move into the Home.

1072808

13.     On or about November 21, 2007, St. Coletta's through its agents and/or contractors applied to the City for a building permit for the installation of a fire alarm system and sprinkler system, which work must be done in accordance with Illinois law.

14.     Based on information provided by the City that St. Coletta's needed zoning approval and a business license before getting permits to install a fire and sprinkler systems, on or about November 30, 2007 St. Coletta's filed its petition for approval, its application for a business license and tendered a $500 filing fee.

15.     The City made no response to St. Coletta's after St. Coletta's filed it petition and application for a business license, while tendering the $500 filing fee.

16.     On or about December 11, 2007, St. Coletta's inquired with the City about the status of its petition, application and expedited meeting, but was unable to make any progress with the City and was unable to get an expedited meeting before the Planning Commission.

17.     After the City advised St. Coletta's that it needed zoning approval for use of the Home as a residential group home, the City Council's attorney Steven Miller ("Mr. Miller"), was contacted by St. Coletta's attorney for clarification.

18.     After numerous calls and several letters, Mr. Miller advised St. Coletta's that he did not believe that the Code required any zoning approval for St. Coletta's to use the Home for its intended purpose as a residential group home.

19.     Mr. Miller also advised St. Coletta's to meet with the Planning Commission on January 9 and seek approval and issuance of a business license as a pre-condition to St. Coletta's getting on the City Council's agenda for January 16 even though the Planning Commission has no responsibility for approving licenses.

1072808

20. St. Coletta's requested that the building permits be issued while St. Coletta's other requests were pending. St. Coletta's request was denied.

21. Although St. Coletta's paid $500 to "expedite" the Planning Commission's hearing on St. Coletta's request, no expedited hearing before the Commission was scheduled prior to the January 9, 2008 regular meeting.

22. I, along with Ray Bryan and counsel, appeared before the City's Planning Commission on January 9, 2008, only to learn that prior to the meeting, the Planning Commission received a report by a consultant hired by the City, in which the consultant recommended that the Planning Commission reject St. Coletta's petition for approval on the supposed basis that a residential group home would be a non-conforming use for which zoning approval was required.

23. The consultant's position, to the extent it was shared during the Planning Commission meeting, completely contradicted Mr. Miller's previous legal opinion that St. Coletta's did not need to apply for a rezoning of the Property, and is in fact at odds with, and unsupported by, the Code's plain language.

24. The City did not provide St. Coletta's with a copy of the consultant's report before or even at the January 9, 2008 Planning Commission hearing.

25. At the hearing, we expressed to the Planning Commission that we believed the Home was permitted by existing zoning and that no business license was even necessary under the Code. Despite our position, in an effort to facilitate timely opening of the Home and prevent displacement of the prospective residents, we requested that the Planning Commission: 1) approve the use; 2) approve the business license and record it to the City so St. Coletta's could

be placed on the January 16 City Council meeting agenda for approval of the business license; and 3) instruct the City staff to issue the building permits for the sprinkler and fire alarm system.

26. On the public record, Mr. Goodlow advised the Planning Commission that St. Coletta's and the seller of the Property provided fraudulent and misleading information to the City in order to obtain an occupancy permit for the Property and that he would never have issued the certificate of occupancy if he had known that it was going to be used as a group home.

27. The Planning Commission also acknowledged that St. Coletta's petition and application has been misplaced, yet it refused to expedite any further necessary proceedings.

28. When the Planning Commission opened the floor for general discussion, several Markham residents spoke out against St. Coletta's opening of the Home expressing concern about St. Coletta's residents being criminals and sexual predators.

29. We confirmed that none of St. Coletta's residents have criminal backgrounds.

30. After the open session, the Planning Commission's other and newly appointed attorney (*not* Mr. Miller, whose zoning opinion had supported St. Coletta's planned use of the Home) suggested that the Planning Commission needed additional time to consider the conclusions of its consultant and her own legal opinion to the Planning Commission.

31. As a result, the Planning Commission refused to address our requests, failed to make any recommendation to the City Council and refused to authorize the addition of St. Coletta's to the City Council's meeting agenda for January 16, 2008.

32. St. Coletta's petition was tabled until the next regularly scheduled planning commission meeting, which the City knew would be too late to facilitate the January 30, 2008 deadline.

1072808

33. At the meeting, the Planning Commission also informed us that it needed to pay an additional $250.00 for a special Planning Commission meeting, even though St. Coletta's had been told that it would only cost $500.00 for an expedited hearing.

34. On January 10, 2008, St. Coletta's paid the additional $250.00 for an expedited hearing.

35. St. Coletta's still has not been scheduled for a special Planning Commission meeting.

36. On or about January 9, 2007, I was informed that the Mayor instructed that the water to the Property be turned off without notice, even though there was no delinquency in the water bill payments for the Property.


FURTHER AFFIANT SAYETH NOT

Wayne Kothmeyer

Subscribed and Sworn to
before me this 18th day of January, 2008

Georgene A. Nash
Notary Public

OFFICIAL SEAL
GEORGENE A. NASH
Notary Public - State of Illinois
My Commission Expires Dec 04, 2010

10.2808