UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ST. COLETTA'S OF ILLINOIS, INC.,<br>an Illinois not-for-profit corporation,<br>and JESSE McMORRIS, an individual,<br><br>Plaintiffs,<br>v.<br><br>CITY OF MARKHAM, an Illinois<br>municipal corporation, DAVID WEBB, JR.,<br>J.V. COOK, SR.,<br>THADDEUS GOODLOW and<br>ROGER AGPAWA,<br>individuals,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2008 CV 409<br><br>Judge Milton I. Shadur<br><br><br><br>JURY DEMANDED |

## FIRST AMENDED COMPLAINT

For their complaint against the City of Markham (the "City" or "Markham"), David Webb, Jr. ("Mr. Webb"), J.V. Cook, Sr., ("Mr. Cook"), Thaddeus Goodlow ("Mr. Goodlow") and Roger Agpawa ("Mr. Agpawa"), (collectively the "Defendants"), Plaintiffs St. Coletta's of Illinois, Inc. ("St. Coletta's") and Jesse McMorris ("Mr. McMorris") (collectively "Plaintiffs") by their counsel Nicholas Anaclerio, Jamie A. Robinson and David Levitt of Ungaretti & Harris, LLP, state:

### NATURE OF ACTION

1. This is an action to enjoin and redress Defendant's ongoing disability discrimination in housing, and to vindicate Plaintiffs' federal statutory and Constitutional rights to enjoy the full and equal protection of the laws, particularly the laws pertaining to that most fundamental of human needs, suitable housing. By stalling Plaintiffs, by denying them requested municipal permits to which they have been entitled, by giving Plaintiffs inconsistent direction

and offering them inaccurate and unsupported interpretations of zoning and other ordinances, Defendants have deliberately, discriminatorily and unlawfully blocked St. Coletta's efforts to prepare and open a residential group home for disabled residents, including Mr. McMorris, at 16207 South Central Park in Markham, Illinois (the "Home"). Defendants' willful violations of federal law and the United States and Illinois Constitutions' guarantees of equal protection threaten to leave Mr. McMorris and his fellow residents without suitable and appropriate housing when the lease for their present residence expires January 31, 2008. Based on groundless, ugly stereotypes abhorrent to federal law, Defendants have arbitrarily and illegally determined that they do not want Mr. McMorris and his fellow disabled residents in their "backyard," and that they will apply illegal means to keep them out.

2.      Once the Defendants learned that St. Coletta's intended to operate the Home as a residential group home for the disabled, they refused to issue St. Coletta's the permits necessary to improve it for operation as such. As part of a pretextual scheme of housing and disability discrimination, the City informed St. Coletta's that it needed both a business license and zoning approval before it would issue any permits, and on that basis the City has withheld the permits. But under Markham's Code of Ordinances (the "Code"), St. Coletta's can lawfully use the Home for its intended purpose and needs no business license or zoning approval. St. Coletta's intended use of the Home conforms entirely to existing zoning without any need for further zoning approval or variance. Thus, Defendants "requirements" for issuance of the permits (that St. Coletta's first secure a business license and zoning approval), are not mandated by the Code or by any other pertinent ordinance, law or regulation. And once Defendants erected their artificial business license and zoning barriers in Plaintiffs' path, they also manufactured a "process" to preclude St. Coletta's from obtaining the legally unnecessary business license and zoning

approval. As part of its "process" for blocking Plaintiffs, the City has claimed that it "lost" St. Coletta's paperwork, deliberately failed to schedule an expedited Planning Commission hearing that St. Coletta's sought at City direction to obtain the necessary approvals, and issued St. Coletta's conflicting opinions and directions about what it was required to do to obtain the necessary approvals and permits for the Home. The City has stood steadfastly inert, even after St. Coletta's requests for approval were undeniably properly before its Planning Commission, all to advance its unlawful objective to keep St. Coletta's prospective residents out.

3.     The City knows that it is imperative that the Home be ready by January 31, 2008, and that six developmentally disabled individuals, including Mr. McMorris, are waiting to enter St. Coletta's program and begin occupancy of the Home at that time. Each has a lease that expires at the end of January and will have no appropriate housing choice on February 1, 2008 if he cannot move into the Home. Despite its awareness of all of this, the City continues to give St. Coletta's and its prospective residents the "run-around," in the apparent hope that it can force them to seek refuge somewhere else. The Court should issue a writ of mandamus forthwith to compel Defendants, through all necessary City officials, to issue any and all permits, licenses or other authority to enable St. Coletta's to ready the Home for occupancy by January 31, 2008. The Court should also preliminarily and permanently enjoin Defendants' intentional violations of Federal law and Plaintiffs' Constitutional rights, award Plaintiffs their compensatory damages, their attorneys fees in prosecuting this action and further enter an award of punitive damages in Plaintiff's favor to punish Defendants' illegal acts and to deter others from engaging in such reprehensible violations of the law in the future.

## PARTIES

4.      St. Coletta's is a not-for-profit organization organized under the laws of the State of Illinois and it is a 501(c)(3) tax exempt entity which has no owners, shareholders, or any other individuals who receive private benefit.  St. Coletta's owns and operates approximately 30 not-for-profit residential group homes for physically, mentally and developmentally disabled persons in the southwest suburbs of Chicago.

5.      Mr. McMorris is a disabled individual who presently resides at 18131 South 66th Court, Tinley Park, Illinois.

6.      The City is a municipal corporation organized under the laws of the State of Illinois, with its principal municipal offices located at 16313 Kedzie Parkway Markham, Illinois 60426.

7.      Mr. Webb is an individual who is the City's Mayor.

8.      Mr. Cook is an individual who is the Chairman of the Planning Commission.

9.      Mr. Goodlow is an individual who is the City's Residential Building Inspector.

10.     Mr. Agpawa is an individual who is the City's Deputy Fire Chief.

## JURISDICTION AND VENUE

11.     Jurisdiction and venue are appropriate under 28 U.S.C. § 1331 because this Court has original jurisdiction of causes of action arising under the Federal Fair Housing Act and the Americans with Disabilities Act and the acts of Defendants complained of herein occurred in Cook County, Illinois.

12.     Jurisdiction and venue are appropriate under 735 ILCS 5/2-103(a) because the City's principal office is located in Cook County Illinois, and the acts of Defendants complained

of herein occurred in Cook County, Illinois, and because the Court has supplemental jurisdiction over Plaintiff's Illinois law claim for issuance of a writ of mandamus.

## FACTS COMMON TO ALL COUNTS

13.    St. Coletta's owns and since 1994 has operated a residential group home located at 3829 West 154th Place in Markham, Illinois (the "Zolecki Home"). The Zolecki Home was not required to obtain a business license prior to its opening or at any time during its operation from 1994 to the present.

14.    On or about November 3, 2007, St. Coletta's purchased the Home, formerly a single family residence, for the purpose of opening a group home for six (6) developmentally disabled persons.

15.    The Home is intended for 6 adult males who are developmentally, and in one case physically, disabled, which disabilities substantially impair one or more of their major life activities. None of St. Coletta's residents have criminal backgrounds.

16.    St. Coletta's will provide 24-hour supervision for the residents in three 8 hour shifts by employees of St. Coletta's who do not reside or sleep at the Home. The employees also provide transportation services and assistance with activities of daily living, such as cooking and cleaning, paying bills and facilitating social interaction.

17.    St. Coletta's also provides some prospective residents with job training, though some may never be able to work in the community at large due to their disabilities.

18.    The Home is located on property that is zoned for single-family residential use.

19.    Section 156.003 of the Code defines "family" as "[a] group of one or more persons occupying a building and living and cooking in a single dwelling unit. No unrelated group living and cooking in a single dwelling until shall consist of more than six persons, as

distinguished from a group occupying a lodginghouse or hotel." Copies of the relevant portions of the Code are attached as Group Exhibit 1.

20.    Sections 156.051, 156.066, 156.081, 156.096, 156.111 of the Code permit one single-family dwelling on any lot or parcel in an R-1, R-2, R-3, R-3(a) or R-4 zoning district. Group Exhibit 1.

21.    St. Coletta's has entered into contracts with six individuals for rooms at the Home.

22.    One of these contracts is between St. Coletta's and Mr. McMorris, and pursuant to it Mr. McMorris is scheduled and entitled to move into the Home on February 1, 2008.

23.    Mr. McMorris currently lives with 3 other developmentally disabled persons at an apartment located at 18131 South 66th Court in Tinley Park, Illinois. Three of those individuals have been with St. Coletta's and at that apartment for over 10 years.

24.    St. Coletta's rents this apartment for its clients, including Mr. McMorris, and the lease expires at the end of January 2008.

25.    These residents are scheduled to move into the Home at the beginning of February.

26.    St. Coletta's does not have a suitable housing alternative to the Home for Mr. McMorris or the other prospective disabled residents scheduled to move into the Home.

27.    On or about November 21, 2007, St. Coletta's through its agents and/or contractors applied to the City for a permit for the installation of a fire alarm system and sprinkler system, which work must be done in accordance with Illinois law.

28.     Mr. Goodlow informed St. Coletta's that before it could receive a permit, St. Coletta's would have to apply for a business license and also petition the City for approval of the Home's use.

29.     The Code sets forth the activities for which a business license is required.

30.     Specifically, Section 110.15 the Code provides that "any person is deemed to be in business or engaging in nonprofit enterprise, and thus subject to the requirements of this section and division (A) when he does one act of the following:

    a.  Selling any goods or service;

    b.  Soliciting business or offering goods or services for sale or hire;

    c.  Acquiring or using any vehicle or any premises in the city for business purposes;

    d.   Holds himself forth as being engaged in business or an occupation;

    e.  Solicits patronage, actively or passively, for a business or occupation;

    f.  Performs or attempts to perform any part of a business or occupation in the city; or

    g.  The holding or a garage or yard sale of used personal property.

Group Exhibit 1.

31.     While St. Coletta's maintains that these Code provisions do not require and have never required it to apply for or obtain a business permit for the Home, according to Section 110.18 of the Code, upon receipt of an application for a license, the City Clerk is required to refer the application to the Mayor within 48 hours for processing by the City License Commission. Group Ex. 1.

32.    According to Section 110.20 of the Code, the Mayor presents all applications for licenses with the recommendation of the City License Commission to the City Council for approval. Group Ex. 1.

33.    When St. Coletta's approached the City for the requisite paperwork to obtain a license, it informed the City Clerk that it needed an expedited hearing on the petition and application because the Home needed to be fully operational by the end of January 2008.

34.    The City Clerk informed St. Coletta's that the City would expedite a special meeting before the Planning Commission if St. Coletta's paid $500 with its petition.

35.    Relying on the advice and direction of both Mr. Goodlow and the City Clerk, on or about November 30, 2007, St. Coletta's filed its petition for approval, its application for a business license and tendered a $500 filing fee.

36.    The City made no response to St. Coletta's after St. Coletta's filed it petition and application for a business license and tendered the $500 filing fee.  So on or about December 11, 2007, St. Coletta's inquired with the City about the status of its petition, application and expedited meeting.

37.    City staff told St. Coletta's that it would have to speak to the City Clerk, who then informed St. Coletta's that she had no authority to schedule a Planning Commission meeting and that St. Coletta's would have to meet with Mr. Goodlow about the issue.

38.    When St. Coletta's met with Mr. Goodlow, he admitted that St. Coletta's request for expedited review of its petition before the Planning Commission had not been processed, claimed that it had been misplaced, stated that he would try to get the petition expedited and that at least St. Coletta's would be on the next regular meeting agenda scheduled for January 9, 2008.

39.     Mr. Goodlow also advised St. Coletta's that the City was having "trouble" with some other existing group homes in the City because they "allowed rapists and criminals" into the City.

40.     At that time, St. Coletta's expressed to Mr. Goodlow that it believed that neither a license nor a petition were necessary under the Code.  Mr. Goodlow reviewed the Code, but then claimed he would need to speak to an unnamed alderperson.

41.     Mr. Goodlow then purported to make a call to the alderperson, and after the call, advised St. Coletta's that it needed to have a hearing before the Planning Commission.

42.     Mr. Agpawa joined the meeting and stated that he had no problems or issues with the Zolecki Home, but advised St. Coletta's that he could not issue the permits without the necessary license and approvals.

43.     St. Coletta's expressed concern about the delay in the proceedings due to the fact that the Home was scheduled to open at the end of January 2008, and that if it did not open, its prospective residents would be without suitable lodging because their lease expired at the end of January 2008.

44.     Mr. Goodlow then advised St. Coletta's to meet with the Mayor for better directions.

45.     But when St. Coletta's approached the Mayor's office for further direction, the Mayor's secretary refused to let St. Coletta's see the Mayor, referring them instead back to Mr. Goodlow.

46.     After Mr. Goodlow, Mr. Agpawa and the City Clerk advised St. Coletta's that it needed City approval for use of the Home as a residential group home, the City Council's attorney Steven Miller ("Mr. Miller"), was contacted by St. Coletta's for clarification.

47.     After numerous calls and several letters, Mr. Miller advised St. Coletta's that he did not believe that the Code required any zoning approval for St. Coletta's to use the Home for its intended purpose as a residential group home.

48.     Mr. Miller also advised St. Coletta's to meet with the Planning Commission on January 9, 2008 and seek approval and issuance of a business license as a pre-condition to St. Coletta's getting on the City Council's agenda for January 16, 2008 even though the Planning Commission has no responsibility for approving licenses.

49.     St. Coletta's requested that the permits be issued while St. Coletta's other requests were pending.  St. Coletta's request was denied.

50.     Although St. Coletta's paid $500 to "expedite" the Planning Commission's hearing on St. Coletta's request, no expedited hearing before the Commission was scheduled prior to the January 9, 2008 regular meeting.

51.     St. Coletta's appeared before the City's Planning Commission on January 9, 2008, only to learn that prior to the meeting, the Planning Commission received a report by a consultant hired by the City, in which the consultant recommended that the Planning Commission reject St. Coletta's petition for approval on the supposed basis that a residential group home would be a non-conforming use for which zoning approval was required.

52.     The consultant's position, to the extent it was shared during the Planning Commission meeting, completely contradicted Mr. Miller's previous legal opinion that St. Coletta's did not need to apply for a rezoning of the Property, and is in fact at odds with, and unsupported by, the Code's plain language.

53.     The City did not provide St. Coletta's with a copy of the consultant's report before or even at the January 9, 2008 Planning Commission hearing.

54.    At the hearing, St. Coletta's expressed to the Planning Commission that it believed its proposed use was permitted by existing zoning and that no business license was even necessary under the Code.  Despite St. Coletta's position, in an effort to facilitate timely opening of the Home and prevent displacement of the prospective residents, St. Coletta's requested that the Planning Commission: 1) approve the use; 2) approve the business license and record it to the City so St. Coletta's could be placed on the January 16, 2008 City Council meeting agenda for approval of the business license; and 3) instruct the City staff to issue the permits for the sprinkler and fire alarm system.

55.    On the public record, Mr. Goodlow advised the Planning Commission that St. Coletta's and the seller of the Property provided fraudulent and misleading information to the City in order to obtain an occupancy permit for the Property and that he would never have issued the certificate of occupancy if he had known that it was going to be used as a group home.

56.    The Planning Commission also acknowledged that St. Coletta's petition and application has been misplaced, yet it refused to expedite any further necessary proceedings.

57.    When the Planning Commission opened the floor for general discussion, several Markham residents spoke out against St. Coletta's opening of the Home expressing concern about St. Coletta's residents being criminals and sexual predators.

58.    St. Coletta's confirmed that none of its residents have criminal backgrounds.

59.    After the open session, the Planning Commission's other and newly appointed attorney, Michelle Broughton-Fountain (*not* Mr. Miller, whose zoning opinion had supported St. Coletta's planned use of the Home) suggested that the Planning Commission needed additional time to consider the conclusions of its consultant and her own legal opinion to the Planning Commission.

60.     As a result, the Planning Commission refused to address St. Coletta's requests, failed to make any recommendation to the City Council and refused to authorize the addition of St. Coletta's to the City Council's meeting agenda for January 16, 2008.

61.     St. Coletta's petition was tabled until the next regularly scheduled planning commission meeting, which the City knew would be too late to facilitate the January 30, 2008 deadline.

62.     At the meeting, the Planning Commission also informed St. Coletta's that it needed to pay an additional $250.00 for a special Planning Commission meeting, even though St. Coletta's had been told that it would only cost $500.00 for an expedited hearing.

63.     On January 10, 2008, St. Coletta's paid the additional $250.00 for an expedited hearing.

64.     St. Coletta's still has not been scheduled for a special Planning Commission meeting.

65.     On or about January 9, 2007, St. Coletta's was informed by the City that the Mayor instructed that the water to the Property be turned off without notice, even though there was no delinquency in the water bill payments for the Property.

### COUNT I
### (Violations of the Fair Housing Act)

66.     Plaintiffs incorporate their allegations contained in Paragraphs 1-65 as and for their allegations for this paragraph as though fully set forth herein.

67.     The Fair Housing Act ("FHA") makes it unlawful for anyone not exempt under the FHA "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available." 42 U.S.C. § 3604(f)(1)(B).

68.    The Fair Housing Act also makes it unlawful to "interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

69.    The FHA defines "Handicap" in part as "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. 3602(h)(1).

70.    Mr. McMorris and his fellow prospective residents are handicapped persons as that term is defined by the FHA. Mr. McMorris's handicap substantially limits him from living independently, requires that he be supervised and assisted in cooking, cleaning and managing his finances, and otherwise substantially limits him in performing one or more major life activities.

71.    The other residents of St. Coletta's also have handicaps which substantially limit them in performing one or more major life activities.

72.    Through the actions of its Planning Commission, other officials and staff, the City has unlawfully and intentionally discriminated against St. Coletta's, Mr. McMorris and his fellow prospective disabled residents, by refusing to issue to St. Coletta's the permits necessary for the Home to open.

73.    Through the actions of its Planning Commission, other officials and staff, the City has unlawfully and intentionally interfered with St. Coletta's, Mr. McMorris's and his fellow prospective residents' use and enjoyment of the Property by refusing to issue to St. Coletta's the permits necessary for the Home to open.

74.    Through the actions of its Planning Commission, other officials and staff, the City has unlawfully and intentionally discriminated against St. Coletta's, Mr. McMorris and his fellow prospective disabled residents in violation of the FHA by deliberately delaying and

blocking the issuance of the permits necessary for the Home to open, despite being permitted by the Code .

75.    The City's unlawful discriminatory intent in delaying and ultimately refusing to issue the permits is evinced by one or more the following acts or failures to act:

a.    The City's failure to schedule a special Planning Commission meeting even though St. Coletta's paid a fee to expedite a hearing;

b.    The City's inability to identify any City official who was responsible for scheduling a special Planning Commission meeting;

c.    The City's failure to notify St. Coletta's that its petition and application had been lost, and/or its false claim respecting the supposed "loss" of such documents;

d.    The City's contradicting opinions regarding the requirements St. Coletta's was to meet to open the Home;

e.    Mr. Goodlow's statement that group homes were bringing criminals and sexual offenders into the City and that St. Coletta's had provided fraudulent information to the City to obtain its occupancy permit and that he never would have issued the permit had he known it was for a group home;

f.    The City's refusal to allow St. Coletta's to proceed with installing the fire alarm and sprinkler systems at their own risk while their request for a business license and zoning approval were pending;

g.    The City's refusal to act upon St. Coletta's requests after the Planning Commission meeting on January 9, 2008, despite its awareness of the urgency of having the Home opened by January 31, 2008;

h.   The City's refusal to put St. Coletta's on the City Council's agenda for January 16, 2008, despite its awareness of the urgency in having the Home opened by January 31, 2008;

i.   The City's refusal to expedite a Planning Commission meeting after St. Coletta's paid an additional $250 for an expedited meeting;

j.   The Mayor instructing the City to turn off the water to the Property without notice to St. Coletta's and without any delinquency in payment of the water bills for the Home.

76.   Mr. Goodlow has personally intentionally discriminated against the Plaintiffs by stalling the proceedings; by misleading St. Coletta's as to the process necessary for St. Coletta's to obtain permits necessary to opening the Home; by failing to issue or facilitate issuance of the necessary permits to St. Coletta's; by failing to notify St. Coletta's that its application and petition had been lost or by falsely claiming that such documents were lost when indeed they were not; and by failing to schedule a special Planning Commission meeting even though St. Coletta's requested and paid for an expedited hearing; by accusing St. Coletta's of fraud and stating that he would have never issued an occupancy permit for the Property if he had known that it was going to be a group home; and by stating that group homes were bringing criminals and rapists into the City.

77.   The Mayor, Mr. Webb has personally and intentionally discriminated against the Plaintiffs by instructing the City to turn the water off to the Property, without notice to St. Coletta's and despite the fact that St. Coletta's is current on its water bills.

78.   The Planning Commission has intentionally discriminated against the Plaintiffs by stalling the proceedings by which St. Coletta's must obtain permits necessary to opening the

Home; by failing to issue the necessary permits; by failing to recommend approval of the Property for use as a residential group home, by failing to recommend approval of St. Coletta's application for a business license; by failing to hold a special Plan Commission meeting even though St. Coletta's requested and paid for an expedited hearing; and by failing to put the foregoing issues before the City Council as requested by St. Coletta's.

WHEREFORE, the Plaintiffs respectfully request that this Court enter an order in their favor and against the Defendants:

a.      preliminarily enjoining the City and all of its officials and agents, including without limitation the Planning Commission and Mr. Goodlow, from interfering with the opening or operation of the Home, or otherwise violating the FHA;

b.      permanently enjoining the City and all of its officials and agents, including without limitation the Planning Commission and Mr.Goodlow, from engaging in further unlawful discrimination and violations of the FHA against the Plaintiffs and the other residents of the Home.

c.      awarding judgment in Plaintiffs' favor and against the Defendants for all damages incurred by Plaintiffs related to the delay in opening the Home;

d.      awarding judgment in Plaintiffs' favor and against the Defendants Mr. Webb, Mr. Cook, Mr. Goodlow, Mr. Roger Agpawa, for punitive and exemplary damages to punish their violations of the FHA and to deter others from committing such acts in the future;

e.      awarding judgment in Plaintiffs' favor and against the Defendants for Plaintiffs' costs and attorneys fees in prosecuting this action; and

f.    for such other further relief as this Court deems fair, just and equitable in the premises.

## COUNT II
### (Violations of the Americans with Disabilities Act)

79.    Plaintiffs incorporate their allegations contained in Paragraphs 1-78 as and for their allegations for this paragraph as though fully set forth herein.

80.    The Americans with Disabilities Act (the "ADA") makes it unlawful for a public entity to discriminate against a disabled individual based on that individual's disability.  42 U.S.C. § 12132.

81.    The ADA defines "Disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."  42 U.S.C. § 12102(2)(A).

82.    The ADA defines "Public entity" as any state or local government, department, agency, special purpose district, or other instrumentality of a state or states or local government. 42 U.S.C. § 12131(1)(A)-(B).

83.    Mr. McMorris has a disability as the ADA defines that term because he has a physical or mental impairment that substantially limits him in one or more major life activities, including without limitation living independently and without supervision or assistance in performing activities of daily living.

84.    Mr. McMorris's fellow prospective residents of the Home are also disabled for purposes of the ADA, substantially limited in one or more major life activities.

85.    Through the actions of its Planning Commission, other officials and staff, the City has unlawfully discriminated against the Plaintiffs in violation of the ADA by refusing to issue to St. Coletta's the permits necessary for the Home to open.

86.    Through the actions of its Planning Commission, other officials and staff, the City has unlawfully discriminated against the Plaintiffs in violation of the ADA by intentionally delaying the issuance of the permits necessary for the Residential Group Home to open.

87.    The City's unlawful discriminatory intent is evinced by one or more of the following acts or omissions to act:

a.    The City's failure to schedule a special Planning Commission meeting even though St. Coletta's paid a fee to expedite a hearing;

b.    The City's inability to identify any City official who was responsible for scheduling a special Planning Commission meeting;

c.    The City's failure to notify St. Coletta's that its petition and application had been lost, and/or its false claim respecting the supposed "loss" of such documents;

d.    The City's contradicting opinions regarding the requirements St. Coletta's was to meet to open the Home;

e.    Mr. Goodlow's statement that group homes were bringing criminals and sexual offenders into the City and that St. Coletta's had provided fraudulent information to the City to obtain its occupancy permit and that he never would have issued the permit had he known it was for a group home;

f.    The City's refusal to allow St. Coletta's to proceed with installing the fire alarm and sprinkler systems at their own risk while their request for a business license and zoning approval were pending;

g. The City's refusal to act upon St. Coletta's requests after the Planning Commission meeting on January 9, 2008, despite its awareness of the urgency of having the Home opened by January 31, 2008;

h. The City's refusal to put St. Coletta's on the City Council's agenda for January 16, 2008, despite knowing the urgency in having the Home opened by January 31, 2008;

i. The City's refusal to expedite a Planning Commission meeting after St. Coletta's paid an additional $250 for an expedited meeting;

j. The Mayor instructing the City to turn off the water to the Property without notice to St. Coletta's and without any delinquency in payment of the water bills for the Home.

88. Mr. Goodlow has personally and intentionally discriminated against the Plaintiffs by stalling the proceedings; by misleading St. Coletta's as to the process necessary for St. Coletta's to obtain permits necessary to opening the Home; by failing to issue or facilitate issuance of the necessary permits to St. Coletta's; by failing to notify St. Coletta's that its application and petition had been lost or by falsely claiming that such documents were lost when indeed they were not; and by failing to schedule a special Planning Commission meeting even though St. Coletta's requested and paid for an expedited hearing; by accusing St. Coletta's of fraud and stating that he would have never issued an occupancy permit for the Property if he had known that it was going to be a group home; and by stating that group homes were bringing criminals and rapists into the City.

89.     The Mayor, Mr. Webb has personally and intentionally discriminated against the Plaintiffs by instructing the City to turn the water off to the Property, without notice to St. Coletta's and despite the fact that St. Coletta's is current on its water bills.

90.     The Planning Commission has intentionally discriminated against the Plaintiffs by stalling the proceedings by which St. Coletta's must obtain permits necessary to open the Home; failing to issue the necessary permits; failing to recommend approval of the Home for use as a residential group home, failing to recommend approval of St. Coletta's application for a business license; failing to hold a special plan commission meeting even though St. Coletta's requested and paid for an expedited hearing; and failing to put these foregoing issues before the City Council as requested by St. Coletta's.

WHEREFORE, the Plaintiffs respectfully request that this Court enter an order in their favor and against the Defendants:

a.      preliminarily enjoining the City, its officials and staff including without limitation, its Planning Commission and Mr. Goodlow, from further interfering with the opening or operation of the Home or otherwise violating the ADA;

b.      for a permanently enjoining the City, its officials and staff including without limitation, its Planning Commission and Mr. Goodlow, from engaging in further discrimination and violations of the ADA against the Plaintiffs and the other prospective disabled residents of the Home;

c.      awarding judgment against the Defendants and in favor of Plaintiffs for all damages incurred by the Plaintiffs related to the delay in opening the Home;

d.      awarding judgment against the Defendants and in favor of Plaintiffs for
Plaintiffs' costs and attorneys fees incurred in prosecuting this action;

e.      for such other further relief in Plaintiffs' favor and against the Defendants
as that this Court deems fair, just and equitable in the premises.

## COUNT III
### (Violations of the Rehabilitation Act of 1973)

91.     Plaintiffs incorporate their allegations contained in Paragraphs 1-90 as and for its
allegations for this paragraph as though fully set forth herein.

92.     The Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, makes it
unlawful for any municipality receiving federal government funds to discriminate against any
disabled individual based on that individual's disability, and because, on information and belief,
the Defendant City is a recipient of federal government funds for Rehabilitation Act purposes, it
is subject to the prohibitions on disability discrimination set forth therein.

93.     The Rehabilitation Act defines "Disability" as "a physical or mental impairment
that substantially limits one or more major life activities." 29 U.S.C. § 705(9)(b).

94.     Mr. McMorris has a disability as the Rehabilitation Act defines that term because
he has a physical or mental impairment that substantially limits him in one or more major life
activities, including without limitation, living independently and without supervision or
assistance in performing activities of daily living.

95.     Mr. McMorris's fellow prospective residents of the Home are also disabled for
purposes of the Rehabilitation Act, substantially limited in one or more major life activities.

96.    Through the actions of its Planning Commission, other officials and staff, the City has unlawfully discriminated against the Plaintiffs in violation of the Rehabilitation Act by refusing to issue to St. Coletta's the permits necessary for the Home to open.

97.    Through the actions of its Planning Commission, other officials and staff, the City has unlawfully discriminated against the Plaintiffs in violation of the Rehabilitation Act by intentionally delaying the issuance of the permits necessary for the Residential Group Home to open.

98.    The City's unlawful discriminatory intent is evinced by one or more of the following acts or omissions to act:

   a.    The City's failure to schedule a special Planning Commission meeting even though St. Coletta's paid a fee to expedite a hearing;

   b.    The City's inability to identify any City official who was responsible for scheduling a special Planning Commission meeting;

   c.    The City's failure to notify St. Coletta's that its petition and application had been lost, and/or its false claim respecting the supposed "loss" of such documents;

   d.    The City's contradicting opinions regarding the requirements St. Coletta's was to meet to open the Home;

   e.    Mr. Goodlow's statement that group homes were bringing criminals and sexual offenders into the City and that St. Coletta's had provided fraudulent information to the City to obtain its occupancy permit and that he never would have issued the permit had he known it was for a group home;

f.  The City's refusal to allow St. Coletta's to proceed with installing the fire alarm and sprinkler systems at their own risk while their request for a business license and zoning approval were pending;

g.  The City's refusal to act upon St. Coletta's requests after the Planning Commission meeting on January 9, 2008, despite its awareness of the urgency of having the Home opened by January 31, 2008;

h.  The City's refusal to put St. Coletta's on the City Council's agenda for January 16, 2008, despite knowing the urgency in having the Home opened by January 31, 2008;

i.  The City's refusal to expedite a Planning Commission meeting after St. Coletta's paid an additional $250 for an expedited meeting;

j.  The Mayor instructing the City to turn off the water to the Property without notice to St. Coletta's and without any delinquency in payment of the water bills for the Home.

99.   Mr. Goodlow has personally and intentionally discriminated against the Plaintiffs in one or more of the foregoing respects including by stalling and fabricating the proceedings and requirements for St. Coletta's to open and operate the Home as a group home; by misleading St. Coletta's as to the process necessary for St. Coletta's to obtain permits necessary to opening the Home; by failing to issue or facilitate issuance of the necessary permits to St. Coletta's; by failing to notify St. Coletta's that its application and petition had been lost or by falsely claiming that such documents were lost when indeed they were not; and by failing to schedule a special Planning Commission meeting even though St. Coletta's requested and paid for an expedited hearing; by accusing St. Coletta's of fraud and stating that he would have never issued an

occupancy permit for the Property if he had known that it was going to be a group home; and by stating that group homes were bringing criminals and rapists into the City.

100.    The Mayor, Mr. Webb has personally and intentionally discriminated against the Plaintiffs in one or more of the foregoing respects including by stalling and fabricating the proceedings and requirements for St. Coletta's to open and operate the Home as a group home; and by instructing the City to turn the water off to the Property, without notice to St. Coletta's and despite the fact that St. Coletta's is current on its water bills.

101.    The Planning Commission including Mr. Cook, has personally and intentionally discriminated against the Plaintiffs in one or more of the foregoing respects including by stalling and fabricating the proceedings and requirements for St. Coletta's to open and operate the Home as a group and the process by which St. Coletta's has been required to obtain permits necessary to open the Home; failing to issue the necessary permits; failing to recommend approval of the Home for use as a residential group home, failing to recommend approval of St. Coletta's application for a business license; failing to hold a special plan commission meeting even though St. Coletta's requested an expedited and paid for an expedited hearing; and failing to put these foregoing issues before the City Council as requested by St. Coletta's.

102.    Mr. Agpawa has personally and intentionally discriminated against the Plaintiffs in one or more of the foregoing respects including by stalling and fabricating the proceedings and requirements for St. Coletta's to open and operate the Home as a group and the process by which St. Coletta's has been required to obtain permits necessary to open the Home; failing to issue and/or sign the necessary permits; manufacturing unlawful and unnecessary requirements that he sign municipal permits in order to validate them for St. Coletta's use; and manufacturing

unlawful and unnecessary requirements for changes to the sprinkler system installation plan for the Home.

WHEREFORE, the Plaintiffs respectfully request that this Court enter an order in their favor and against the Defendants:

      a.      preliminarily enjoining the City, its officials and staff including without limitation Defendants, from further interfering with the opening or operation of the Home or otherwise violating the Rehabilitation Act;

      b.      for a permanently enjoining the City, its officials and staff including without limitation Defendants, from engaging in further discrimination and violations of the Rehabilitation Act against the Plaintiffs and the other prospective disabled residents of the Home;

      c.      awarding judgment against the Defendants and in favor of Plaintiffs for all damages incurred by the Plaintiffs related to the delay in opening the Home;

      d.      awarding judgment against the Defendants and in favor of Plaintiffs for Plaintiffs' costs and attorneys fees incurred in prosecuting this action;

      e.      for such other further relief in Plaintiffs' favor and against the Defendants as that this Court deems fair, just and equitable in the premises.

**COUNT IV**
**(42 U.S.C. § 1983 Action)**

103.    Plaintiffs incorporate their allegations contained in Paragraphs 1-102 as and for its allegations for this paragraph as though fully set forth herein.

104.    Defendants' treatment of Plaintiffs and of the other prospective residents of the Home, as alleged herein, effectuates a deprivation of their federal Constitutional rights to equal protection of the law, in that, on information and belief Defendants have singled out Plaintiffs and the other prospective residents of the Home for such treatment and not treated similarly-situated non-disabled individuals in a like manner with respect to Defendants' interpretation and application of the Code, issuance of permits, issuance of business licenses, convening of Building Commission and City Council meetings, and provision or discontinuation of residential water service.

105.    Defendants' deprivation of the federal Constitutional rights of Plaintiffs was done under the color of state law.

106.    Defendants' deprivation of the federal Constitutional rights of Plaintiffs was, upon information and belief, made with evil intent and in reckless disregard for and deliberate indifference to, Plaintiffs' Constitutional rights.

WHEREFORE, the Plaintiffs respectfully request that this Court enter an order in their favor and against the Defendants:

  a.    preliminarily enjoining the City, its officials and staff including without limitation Defendants, from interfering with the opening or operation of the Home or otherwise abridging Plaintiffs' federal Constitutional rights to equal protection of the laws;

  b.    permanently enjoining the City, its officials and staff including without limitation Defendants, from otherwise abridging Plaintiffs' Illinois State and federal Constitutional rights to equal protection of the laws;

c.   awarding judgment in Plaintiffs' favor and against Defendants for all damages incurred by Plaintiffs related to the delay in opening the Home;

d.   awarding judgment in Plaintiffs' favor and against the Defendants Mr. Webb, Mr. Cook, Mr. Goodlow, Mr. Agpawa, for punitive and exemplary damages to punish their violations of The Fourteenth Amendment of the United States Constitution and to deter others from committing such acts in the future;

e.   awarding judgment in Plaintiffs' favor and against Defendants for all of Plaintiffs' costs and attorneys fees incurred in prosecuting this action, pursuant to 42 U.S.C. § 1988(b);

f.   granting such other or additional relief in Plaintiffs' favor and against Defendants as this Court deems fair, just and equitable in the premises.

## COUNT V
### (Equal Protection Violations – Federal Law)

107.   Plaintiffs incorporate their allegations contained in Paragraphs 1-105 as and for its allegations for this paragraph as though fully set forth herein.

108.   The Fourteenth Amendment of the United States Constitution provides that no State shall "deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend. XIV, § 1.

109.   Due process and equal protection require that governments treat similarly situated individuals in a similar fashion.

110.   Defendants' treatment of Plaintiffs and of the other prospective residents of the Home, as alleged herein, effectuates a deprivation of their federal Constitutional rights to equal protection of the law in that, on information and belief Defendants have singled out Plaintiffs and the other prospective residents of the Home for such treatment and not treated similarly-situated non-disabled individuals in a like manner with respect to Defendants' interpretation and application of the Code, issuance of permits, issuance of business licenses, convening of Building Commission and City Council meetings, and provision or discontinuation of residential water service.

WHEREFORE, the Plaintiffs respectfully request that this Court enter an order in their favor and against the Defendants:

a.   preliminarily enjoining the City, its officials and staff including without limitation Defendants, from interfering with the opening or operation of the Home or otherwise abridging Plaintiffs' federal Constitutional rights to equal protection of the laws;

b.   permanently enjoining the City, its officials and staff including without limitation Defendants, from otherwise abridging Plaintiffs' federal Constitutional rights to equal protection of the laws;

c.   awarding judgment in Plaintiffs' favor and against Defendants for all damages incurred by Plaintiffs related to the delay in opening the Home;

d.   awarding judgment in Plaintiffs' favor and against the Defendants Mr. Webb, Mr. Cook, Mr. Goodlow, Mr. Agpawa, for punitive and exemplary damages to punish their violations of The Fourteenth Amendment of the

United States Constitution and to deter others from committing such acts in the future;

e.    awarding judgment in Plaintiffs' favor and against Defendants for all of Plaintiffs' costs and attorneys fees incurred in prosecuting this action;

f.    granting such other or additional relief in Plaintiffs' favor and against Defendants as this Court deems fair, just and equitable in the premises.

## COUNT VI
### (Equal Protection Violations – Illinois Law)

111.    Plaintiffs incorporate their allegations contained in Paragraphs 1-109 as and for its allegations for this paragraph as though fully set forth herein.

112.    Article I, Section 2 of the Illinois Constitution entitled "Due Process and Equal Protection" provides that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." ILL. CONST., art. I, § 2.

113.    Due process and equal protection require that governments treat similarly situated individuals in a similar fashion.

114.    Defendants' treatment of Plaintiffs and of the other prospective residents of the Home, as alleged herein, effectuates a deprivation of their Illinois Constitutional rights to equal protection of the law in that, on information and belief Defendants have singled out Plaintiffs and the other prospective residents of the Home for such treatment and not treated similarly-situated non-disabled individuals in a like manner with respect to Defendants' interpretation and application of the Code, issuance of permits, issuance of business licenses, convening of Planning Commission and City Council meetings, and provision or discontinuation of residential water service.

WHEREFORE, the Plaintiffs respectfully request that this Court enter an order in their favor and against the Defendants:

a.  preliminarily enjoining the City, its officials and staff including without limitation Defendants, from interfering with the opening or operation of the Home or otherwise abridging Plaintiffs' Illinois State Constitutional rights to equal protection of the laws;

b.  permanently enjoining the City, its officials and staff including without limitation Defendants, from otherwise abridging Plaintiffs' Illinois State Constitutional rights to equal protection of the laws;

c.  awarding judgment in Plaintiffs' favor and against Defendants for all damages incurred by Plaintiffs related to the delay in opening the Home;

d.  awarding judgment in Plaintiffs' favor and against the Defendants Mr. Webb, Mr. Cook, Mr. Goodlow, Mr. Agpawa, for punitive and exemplary damages to punish their violations of Article I, Section 2 of the Illinois Constitution and to deter others from committing such acts in the future;

e.  awarding judgment in Plaintiffs' favor and against Defendants for all of Plaintiffs' costs and attorneys fees incurred in prosecuting this action;

f.  granting such other or additional relief in Plaintiffs' favor and against Defendants as this Court deems fair, just and equitable in the premises.

## COUNT VII
### (Petition for Mandamus)

115.  Plaintiffs incorporate their allegations contained in Paragraphs 1-114 as and for its allegations for this paragraph as though fully set forth herein.

116.    Pursuant to 735 ILCS 5/14-101 of the Illinois Code of Civil Procedure, Plaintiffs are entitled to this Court's issuance of a writ of mandamus to compel Defendants to provide them with all permits for which St. Coletta's has duly applied.    Plaintiffs have shown a clear, affirmative right to this relief, and Defendants' legal duty to act is clear, though their refusal to act is and has been obdurate and intractable.

117.    Mr. Goodlow, the Residential Building Inspector and the Fire Chief for Markham are responsible for issuing permits.

118.    St. Coletta's applied for a permit to construct a fire alarm system and sprinkler system.

119.    The installation of the fire alarm system and sprinkler system are required before any residents move into the Residential Group Home.

120.    The Defendants are under a duty to issue permits upon submission of proper application and payment in a reasonable manner and within a reasonable time frame.

121.    Issuance of permits, upon information and belief, is non-discretionary and not contingent upon an applicants' licensure or demonstration of zoning compliance and no such conditions for issuance of permits is provided for in the Code.

122.    The Defendants failed to issue the permits even though they were required to do so.

123.    Even if the issuance of a permit was contingent on obtaining a license or other zoning approval, the Defendants have failed to act on St. Coletta's license application and petition for zoning approval and have intentionally delayed, obfuscated and abused the approval process.

124.    St. Coletta's has a clear right to the performance of this duty because it is has a valid ownership interest in the Property and the Defendants' failure to issue the permits will prevent the Home from opening in a timely manner.

125.    On many occasions from November of 2007 through the present, St. Coletta's requested that Mr. Goodlow issue said permits, but the Defendants have refused and still refuse to do so.

126.    As a result of this failure, Plaintiffs have been injured to the extent that Defendants have hindered them in making necessary building modifications to comply with State law, and St. Coletta's may not be able to have the Home safely ready and habitable for prospective residents' occupancy by the January 31, 2008 deadline.

WHEREFORE, Plaintiffs request that this Honorable Court issue a writ of mandamus against Defendants requiring them to issue forthwith all permits for which Plaintiffs have applied at issue, and a judgment for Plaintiffs' damages in the delay caused by the Defendants in failing to issue the permits, with costs assessed in Plaintiffs' favor and against Defendants in accordance with 735 ILCS 5/14-105 and for such other relief as this Court deems fair, just, equitable and appropriate in the premises.

## COUNT VIII
### (Injunctive Relief)

127.    Plaintiffs incorporate their allegations contained in Paragraphs 1-126 as and for their allegations for this paragraph as though fully set forth herein.

128.    The Plaintiffs and the other prospective residents have a valid, protectable interest in occupying the Home.

129.    St. Coletta's is the rightful owner of the Home, and, therefore, has a valid interest in installing a sprinkler system and fire alarm to safeguard the Property and inhabitants therein from the risk of fire.

130.    Plaintiffs are substantially likely to prevail on the merits in proving that St. Coletta's is entitled to a permit; that St. Coletta's is entitled to open and operate the Home as a group home; that the Plaintiffs and the other prospective residents are entitled to live in the Home; and that the Defendants have violated the ADA and FHA and abridged Plaintiffs Illinois State and federal Constitutional right to equal protection of the laws as aforesaid.

131.    If injunctive relief is not granted, Plaintiffs and the other prospective residents will sustain grievous and irreparable harm because they will have no safe and appropriate housing after January 31, 2008. St. Coletta's will be impaired in serving, indeed prevented from performing its mission with respect to providing safe, appropriate and beneficial housing and assistance to Mr. McMorris and to his fellow disabled prospective residents. St. Coletta's is also reasonably likely to sustain severe harm to its good will and reputation as well as the prospective loss of hundreds of thousands of dollars in funding essential to its mission.

132.    Plaintiffs have no adequate remedy at law.

WHEREFORE, the Plaintiffs respectfully request that this Court enter an order against the Defendants:

   a. preliminarily enjoining the City, its officials and staff, including without
      limitation its Planning Commission and Mr. Goodlow, from interfering with the
      opening or operation of the Home;

   b. permanently enjoining the City, its officials and staff, including without limitation
      its Planning Commission and Mr. Goodlow, from interfering with the opening or

operation of the Home or otherwise engaging in further unlawful discrimination and violations of Illinois State and federal Constitutional rights to equal protection of the law against the Plaintiffs and the other residents of the residential group home;

c.  requiring Defendants to issue to Plaintiffs all the applied-for permit(s) to facilitate the prompt installation of a sprinkler system and/or fire alarm system for the Home;

d.  requiring that the Defendants immediately restore residential water service to the Home; and

e.  for such further appropriate equitable relief as the Court deems fair and just in the premises.

## COUNT IX
### (Declaratory Judgment)

133.    Plaintiffs incorporate their allegations contained in Paragraphs 1-132 as and for their allegations for this paragraph as though fully set forth herein.

134.    Group homes are regulated by the Illinois Department of Human Services under 59 Ill. Admin. Code § 115 and in accordance with a comprehensive regulatory scheme set forth in the Community-Integrated Living Arrangements Licensure and Certification Act ("CILA") 210 ILCS 135/1 et seq.,  the express purpose of which

> "is to promote the operation of community-integrated living arrangements for the supervision of persons with mental illness and persons with a developmental disability by licensing community mental health or developmental services agencies to provide an array of community-integrated living arrangements for such individuals. These community-integrated living arrangements are intended to promote independence in daily living and economic self-sufficiency."

(210 ILCS 135/2)

135.    The City of Markham is preempted from regulating Group Homes, including the
Home, through, among other measures, requiring business licenses, requiring zoning changes or
variances, imposing special use permit requirements, inspection requirements, fire safety, alarm
system, sprinkler system or other regulations on the owners or operators of group homes,
including St. Coletta's.

136.    Despite this preemption, Defendants have purported to regulate the Home, St.
Coletta's and its residents through the various measures, acts, mandates and omissions  to act set
forth herein, such as refusing to issue St. Coletta's permits for fire alarm and sprinkler systems,
imposing business license,  zoning change, and/or other unlawful and preempted regulatory
requirements.

137.    None of the City's and Defendants' requirements for the Home as alleged herein
are based in or required by the City's Code or other ordinances, or any reasonable interpretation
or application thereof.

WHEREFORE, the Plaintiffs respectfully request that this Court enter a declaratory
judgment against the Defendants declaring and finding that:

       a.   the City, its officials and staff, including without limitation Defendants, are
legally barred by preemption from imposing business license, zoning, special use
building or other permit requirements or municipal mandates or regulations on St.
Coletta's with respect to the Home;

       b.   the City's Code, and other ordinances do not permit its officials and staff,
including without limitation Defendants, to impose business license, zoning,
special use, building or other permit requirements or municipal mandates or
regulations on St. Coletta's with respect to the Home; and

c.  the City's Code, and other ordinances do not require that St. Coletta's apply for

    seek, obtain or maintain business licenses, zoning, special use, building or other

    permits or other municipal authority or permission to improve, establish, occupy,

    operate, use or maintain the Home as a residential group home, or to otherwise

    interfere with or influence establishment or use of the Home as a residential group

    home.


Dated:  January 29, 2008            Respectfully Submitted,

                                    ST. COLETTA'S OF ILLINOIS, INC. and
                                    JESSE McMORRIS


                                    By:    /s/ Nicholas Anaclerio
                                           One of Plaintiffs' Attorneys

                                           Nicholas Anaclerio (ARDC #6187889)
                                           Jamie A. Robinson (ARDC #6270503)
                                           David Levitt (ARDC #6280466)
                                           Ungaretti & Harris LLP
                                           70 W. Madison Street, Suite 3500
                                           Chicago, Illinois 60602
                                           Tel.: 312.977.4400