# EXHIBIT 2

# UNGARETTI & HARRIS

UNGARETTI & HARRIS LLP

**CHICAGO**
3500 Three First National Plaza
Chicago, Illinois 60602.4224
Telephone: 312.977.4400
Fax: 312.977.4405

**WASHINGTON**
1500 K Street, N.W., Suite 250
Washington, D.C. 20005.1714
Telephone: 202.639.7500
Fax: 202.639.7505

**SPRINGFIELD**
400 E. Jefferson Street, Suite 1200
Springfield, Illinois 62701.1053
Telephone: 217.544.7000
Fax: 217.544.7950

www.uhlaw.com

Nicholas Anaclerio
Direct No.: (312) 977-4375
nanaclerio@uhlaw.com

*VIA E-MAIL, FACSIMILE AND U.S. MAIL*

February 6, 2008

Jane M. May
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, IL 60062

Michelle Broughton-Fountain, Esq.
19150 S. Kedzie, Suite 103B
Flossmoor, Illinois 60422

Steven R. Miller, Esq.
Miller & Ellison
17508 E. Carriageway Drive
Hazel Crest, Illinois 60429

Re: *St. Coletta's of Illinois, Inc. v. City of Markham, et al.*
United States District Court, Northern District of Illinois
Case No.: 2008 C 409

Counsel:

With immediate effect, our Client, Plaintiff St. Coletta's of Illinois, Inc. ("St. Coletta's"), hereby withdraws its petition and application for a business license to the City of Markham (the "City").

As you are or should be aware, St. Coletta's submitted its petition and application for a business license to the City under protest, subject to, and without waiver of, its continuing assertion that it is not subject to City ordinances pertaining to the issuance of business licenses; that it is not a business for purposes of the City's ordinances or otherwise; that the residence located at 16207 Central Park, Markham, Illinois (the "Home") may be properly operated by St. Coletta's as a group home for the developmentally disabled without a business license; and that neither St. Coletta's nor the Home are subject to the City's regulatory jurisdiction pursuant to the City's ordinances governing businesses and business licenses. St. Coletta's submitted its prior petition and application for a business license for the Home only because of the City's insistence that such was required of it, and in an effort to protect its residents from displacement due to Defendants' unlawful housing and disability discrimination.

**UNGARETTI**
    &HARRIS

February 6, 2008
Page 2

We believe that Judge Shadur's remarks in open court during his January 22, 2008 and January 30, 2008 hearings make it abundantly clear that he wholly rejects Defendants' spurious contention that St. Coletta's is a business, which as such, is required to have a business license to operate the Home. In this regard, Mr. Miller and Ms. Broughton-Fountain will recall that during the January 22, 2008 hearing, Judge Shadur stated that he considered St. Coletta's not-for-profit status as well as the very nature of the group home eliminated any reasonable argument that the Home or St. Coletta's are businesses for purposes of the City's ordinances.

In this regard, we also direct your attention to Judge Shadur's remarks as reflected in pp. 10-11 and 20-21 of the transcript of proceedings before him on January 30, 2008, wherein, among other things, he characterized as "extraordinarily strained" the City's reading of its business license ordinance to apply to St. Coletta's and the Home. The Court stated,

> . . . I think that it is not an accurate characterization to say that St. Coletta's sells services. They may provide services. But remember that the thing that requires the permit under the Village ordinance, when it applies to not-for-profit organizations, it's the sale of goods and services. So that, for example, if the if the Ravinia Festival Association, a not-for-profit organization, were to try to sell tickets and market them, and they wanted to establish a Markham site where they could be located, I think that they would be subject to the ordinance. I think that it's a real - - that it requires a better look at the definition to say that somehow St. Coletta's is involved in the sale of services, because as I understand it these disabled people are not themselves in a position where they can or do pay for the services that are rendered to them. And they are the ones who receive the services.
>
> So anyway, that may be just basically a side issue. But I would commend to counsel taking a better look at that issue in terms of how this ordinance reads and how it's to be construed . . ." (Transcript of January 30, 2008 Proceedings, p. 11, lines 1-21)

In specific response to the remarks of Plaintiffs' counsel, the court later went on to reiterate:

> *MR. ANACLERIO:* The only thing, Judge, would be that I would ask the record to reflect that plaintiffs do not acknowledge any requirement of a business license or any authority of the City Council or of the Plan Commission to require a position [sic] of a business license or any other regulatory requirement that would go along with it.
>
> *THE COURT:* Yes. Again I think I tried to be quite careful in terms of whether the ultimate construction of that ordinance poses a matter for the Court, as

1100194_1

# UNGARETTI & HARRIS

February 6, 2008
Page 3

> contrasted with the officials. I have already given you my views that I really do think that that's an extraordinarily strained reading of the requirement, and I would commend counsel for the City taking another look at that to see whether the idea of saying that they are "selling services," which is a precondition to applicability, really covers this situation. But I am not ruling on that, because if it turns out that the City adheres to the ruling, then it may get presented to me in terms of whether that somehow violates the plaintiffs' rights under other controlling standards. I am not touching on that. I recognize you have staked out your position, fine. But you ought to confer with them about the point that I just made. It seems to me that maybe you can eliminate that from the dispute as well."

Indeed, even Ms. May, in her February 1, 2008 correspondence to me appears to acknowledge that the City's business license argument is untenable and should be abandoned. Therein she wrote:

"... while I do not have authority at present to agree to the three stipulations set forth in your letter of January 30th [concerning inapplicability of the business license requirement], I am prepared to recommend that the City agree to the stipulations set forth in your letter, provided that the residence is operated as a *not-for-profit* group home for the disabled." (February 1, 2008 letter of Jane M. May, p. 1)

Please provide a copy of this correspondence to each of your respective clients and acknowledge in writing your own receipt of it and your transmittal of it to your clients.

Very truly yours,

Nicholas Anaclerio

Enclosure

cc: John J. Durso
    Jamie Robinson

1100194_1